Case 3:22-cv-00046   Document 23   Filed on 01/11/23 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
January 11, 2023
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-46

MICKEY ANDREWS, *PLAINTIFF*,

v.

OWEN MCINTYRE, CITY OF LEAGUE CITY, AND GALVESTON COUNTY, *DEFENDANTS*.

**MEMORANDUM OPINION AND ORDER**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants—Officer Owen McIntyre, the City of League City, and Galveston County—have moved to dismiss under Rule 12(b)(6). Dkts. 10; 11. The court grants in part and denies in part.

## I.   BACKGROUND[1]

The plaintiff, Mickey Andrews, was involved in a serious motor-vehicle accident when his car collided with a motorcycle. Dkt. 1 ¶ 9. After the

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The allegations in this section are taken from the plaintiff's pleadings.

collision, Andrews attempted to render aid to the injured motorcycle driver and instructed bystanders to call 911. *Id.* ¶ 11. He waited by the injured motorcyclist until emergency assistance and police officers arrived. *Id.* ¶ 12. When League City Police Department Officers Owen McIntyre and Upp arrived on the scene, Andrews alleges they accused him of being under the influence of alcohol or narcotics. *Id.* ¶ 13. Andrews told Officer McIntyre that he had not been drinking or using drugs. *Id.* ¶ 14. McIntyre ordered Andrews to take a field sobriety test, which Andrews "eagerly performed." *Id.* ¶ 14.

After Andrews completed the test, Officers McIntyre and Upp told Andrews to put his hands behind his back. *Id.* ¶ 15. Andrews insisted he was sober and asked to take a blood test to prove it to the officers. *Id.* Officers McIntyre and Upp told Andrews there were not any tests available and that he was being arrested. *Id.* When they arrived at the jail, Andrews took two breathalyzer tests and multiple sobriety tests which he alleges indicated he was not intoxicated. *Id.* ¶ 18.

Andrews further alleges that McIntyre then accused him of using drugs, which Andrews denied. *Id.* ¶ 20. Andrews willingly took urine tests and submitted to blood draws and additional sobriety tests. *Id.* ¶ 21. After Andrews "successfully performed all sobriety testing," he alleges that McIntyre said: "You may or not be drunk but I will get you on something."

*Id.* ¶ 22. Andrews was then charged by the Galveston County District Attorney's Office with the felony offense of Intoxication Assault with a Vehicle—Serious Bodily Injury. *Id.* ¶ 23. Andrews was unable to make bond and spent nearly three months in jail, awaiting trial. *Id.* ¶ 24.

Andrews alleges he and his defense counsel repeatedly requested the results from his urine and blood testing without success. *Id.* ¶ 25. Andrews states Galveston County failed to provide the results to him or his attorney while his prosecution was pending. *Id.* ¶¶ 28–29. On August 19, 2021, Galveston County moved to dismiss the charges against Andrews for "insufficient evidence." *Id.* ¶ 31. Andrews's attorney once again requested the laboratory results from the assistant district attorney who told him that they had no duty to disclose the testing results after the prosecution had been dismissed. *Id.* at ¶ 34. After Andrews's attorney reported the assistant district attorney's refusal to the county's administration, Galveston County finally disclosed the results. *Id.* ¶ 35. The tests indicated that Andrews had not consumed drugs or alcohol. *Id.* ¶ 36.

Andrews sued Officer McIntyre, the City of League City, and Galveston County alleging various violations of his civil rights under 42 U.S.C. § 1983 for (1) false arrest; (2) continuing incarceration and detention; (3) conspiracy

to deprive plaintiff of his constitutional rights; (4) municipal liability; and (5) malicious prosecution. *Id.* ¶¶ 37–79.

Officer McIntyre, League City, and Galveston County have moved to dismiss under Rule 12(b)(6). Dkts. 10; 11.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)). Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. To survive a motion to dismiss against a government entity for failure to state a

claim, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

## III. ANALYSIS

### A. Law of Qualified Immunity

Under the doctrine of qualified immunity, government officials are protected "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances the important interests of maintaining accountability in public officials and "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). While it affords "ample protection" to government officials, it does not protect the "plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Once an official pleads the qualified-immunity defense, the burden shifts to the plaintiff who must "rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir.

2010). While the plaintiff "bears the burden of negating qualified immunity . . . all inferences are drawn in his favor." *Id.*

When a court considers the qualified-immunity defense, the inquiry is two pronged: "whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Id.* To be clearly established, the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005)). Reasonableness, in the context of qualified immunity, is a question of law for the court—not an issue of fact. *Atteberry*, 430 F.3d at 256. Finally, "[a] court may rely on either prong of the defense in its analysis." *Brown*, 623 F.3d at 253.

As the Fifth Circuit has explained, complaints must plead more than conclusions, and when the defense of qualified immunity is invoked, a plaintiff is required to at least "engage the affirmative defense." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). Of course, a plaintiff need not "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12." *Id.*

## B. Section 1983

The plaintiff sued Officer Owen McIntyre, League City, and Galveston County for violations of his civil rights under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). A complaint made under § 1983 must allege that the wrongful acts occurred under color of state law and that the complaining parties were deprived of rights granted by the constitution or laws of the United States. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). A plaintiff's complaint under § 1983 must allege that the deprivation of his rights was intentional or due to deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994).

### 1. False Arrest

Andrews's alleges that Officer McIntyre arrested and detained him without probable cause. The Fourth Amendment requires probable cause before an arrest can be made. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); U.S. Const. amend. IV. Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). This probability "is

something more than bare suspicion, but need not reach the fifty percent mark." *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999).

Andrews's complaint quotes McIntyre as saying: "You may or not be drunk but I will get you on something." Dkt. 1 ¶ 22. This statement, in conjunction with Andrews's assertions that he passed the sobriety tests, meets the 12(b)(6) threshold. Dkt. 1 ¶¶ 18, 22. These facts, as alleged, are more than "conclusory" and they are not mere "formulaic recitals." *See Vanskiver*, 2018 WL 560231, at *2.

Applying the two-pronged test for qualified immunity, Andrews has sufficiently pleaded a violation of a clearly established constitutional right. *Callahan*, 623 F.3d at 253. Courts have held that the right to be free from unlawful arrest and detention is a clearly established constitutional right under the Fourth Amendment. *Hayter v. City of Mount Vernon*, 154 F.3d 269, 275 (5th Cir. 1998); *Duckett v. City of Cedar Park*, 950 F.2d 272, 278 (5th Cir. 1992). Given this precedent, and the facts alleged by Andrews pursuant to a lack of probable cause, Andrews's false-arrest claim survives.[2]

---

[2] To the extent Andrews is making a false arrest claim against Galveston County, that claim is dismissed. The LCPD officers involved in the false arrest are employed by League City, not Galveston County, and thus there is no viable false-arrest claim against Galveston County. *See* Dkt. 1 at ¶¶ 4, 40.

## 2. Continuing Incarceration and Detention

Andrews next argues that his incarceration for three months under false pretenses was in violation of his Fourth Amendment rights and, alternatively, Andrews argues his Fourteenth Amendment rights were violated. Dkt. 1 ¶ 44. League City and McIntyre argue that Andrews's continued incarceration and detention claim cannot find relief under the Fourteenth Amendment. Dkt. 10 ¶ 17. Because the court finds that Andrews's complaint may proceed on Fourth Amendment grounds, it declines to address the Fourteenth Amendment argument.

The Fifth Circuit has held there is a constitutional right to timely release from incarceration. *Fleming v. Tunica Cnty., Miss.*, 497 F. App'x 381, 384 (5th Cir. 2012). The Supreme Court has held that § 1983 "must be construed against a background of common law tort principles[.]" *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) (citing *Pierson v. Ray*, 386 U.S. 547, 556–57 (1967)). The elements of common-law false imprisonment are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting harm." *Bryan v. Jones*, 530 F.2d 1210, 1213 (5th Cir. 1976).

Here, Andrews alleges sufficient facts to survive a motion to dismiss based on the elements of false imprisonment. Given that the Fifth Circuit has

recognized the constitutional right to timely release, Andrews's continuing-incarceration claim survives.

### 3. Conspiracy to Deprive Plaintiff of His Constitutional Rights

Section 1983 permits plaintiffs to assert the claim that defendants conspired to deprive them of their civil rights. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990). A conspiracy claim "is not actionable without an actual violation of [§] 1983." *Pfannstiel*, 918 F.2d at 1187. The elements of a § 1983 conspiracy claim are "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Id*.

Andrews alleges that Officer McIntyre, League City, and Galveston County entered into a conspiracy to deprive Andrews of his right to be free from illegal seizure and detention. Dkt. 1 ¶ 47. Andrews cites League City's control over Andrews's sobriety tests as evidence for this assertion. *Id*. at ¶ 49. Andrews also claims that this conspiracy involved state action. *Id*. at ¶ 50.

A conspiracy claim is only actionable alongside a violation of § 1983. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). To establish a conspiracy claim, the plaintiff must allege "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the

conspiracy by a party to the conspiracy." *Pfannstiel*, 918 F.2d at 1187. When a conspiracy is alleged involving actors entitled to qualified immunity, a court must first determine if the alleged state action is objectively reasonable. *Id*. Andrews alleges arrest and continued incarceration without probable cause, an action this court determines to be unreasonable.

"[M]ere conclusory allegations of conspiracy cannot, absent reference to material facts," satisfy the complaint standards for federal conspiracy. *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (citation omitted). Andrews's complaint contains no factual assertions detailing how defendants conspired. The complaint says only that the defendants "entered into a conspiracy to deprive Plaintiff of his right to be free from illegal seizure and detention by acting in concert . . . ." Dkt. 1 ¶ 47. There is insufficient mention of material facts to allow the allegation of conspiracy to continue. Accordingly, the plaintiff's civil-conspiracy charge fails.

### 4. Municipal Liability

To establish municipal liability under § 1983, a plaintiff must show three elements: "a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)). A plaintiff may not satisfy the requirements of municipal liability through a theory of *respondeat superior*. *Piotrowski*,

237 F.3d at 578. Rather, liability is established "when the execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under [§] 1983." *Monell*, 436 U.S. at 694.

A city is liable under § 1983 only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. If the policy is not written, it can still be considered official if it is a custom that is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski,* 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841(5th Cir. 1984)). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "A single decision may constitute municipal policy in 'rare circumstances' if an official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim'" with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right [will] follow." *Arnone v. Syed*, No. 3:17-CV-03027-E, 2021 WL 1865004, at *3 (N.D. Tex. May 10, 2021)

(quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) and *Brown v. Bryan County*, 219 F.3d 450, 460–61 (5th Cir. 2000)), *aff'd sub nom. Arnone v. Dallas Cnty.*, 29 F.4th 262 (5th Cir. 2022). "[T]here must be a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580.

### a. League City

Andrews's complaint alleges that:

- League City had a custom of using improper, coercive investigative techniques and had insufficient policies and training, Dkt. 1 at ¶ 54;
- League City knew it needed policies and trainings on proper investigation techniques, but did not implement such trainings, *id.* at ¶¶ 55–56, 65;
- League City created and tolerated an "atmosphere of lawlessness" that constituted "deliberate indifference to the constitutional rights of [Andrews] and the public," *id.* at ¶ 60;
- Gary Ratliff, Chief of Police at LCPD, allowed or encouraged his officers to use improper or coercive investigative techniques, fail to keep or maintain adequate records, and fail to disclose material exculpatory impeachment evidence, *id.* at ¶ 61;

- League City maintained improper or insufficient policies, customs, and practices in the hiring, training, and supervision of its officers; the handling and testing of evidence; its investigative techniques; its record keeping and documentation of evidence; and other aspects of its investigations and prosecutions, *id.* at ¶ 62; and
- the above failures were illegal, deliberately indifferent to constitutional rights, and led to Andrews's injury, *id.* at ¶¶ 57–59, 63–64, 66.

These conclusory allegations are insufficient to establish a claim of municipal liability against League City.

First, these allegations are not enough to show a policy or custom. "[A] plaintiff must at least allege: a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." *Fraire*, 957 F.2d at 1278. Andrews does not attempt to show any other similar incidents, instead improperly relying only on his own isolated experience to infer an unconstitutional custom or policy.[3]

---

[3] A pattern of complaints could evince not just the existence of the policy, but also deliberate indifference. *Piotrowski*, 237 F3d at 582.

*See Clark v. Thompson*, 850 Fed. Appx. 203, 207–08 (5th Cir. 2021) (affirming a district court's decision to dismiss on grounds that there was no demonstrated pattern). After all, "[i]t is nearly impossible" to impute a policy "without showing a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. Further, the facts alleged do not meet the narrow exception to the requirement of showing a pattern—the final policymaker, LCPD police chief, is not the officer whose specific actions caused the alleged constitutional violation. *See Arnone*, 2021 WL 1865004 at *3.

Second, these statements are all conclusory—any factual allegation directly relates to Andrews's alleged incident rather than League City's policy or the broad effects of that policy on other individuals. There is also no evidence whatsoever as to the policy being the "moving force" or a policymaker's deliberate indifference; the complaint merely parrots the language without more.

### b. Galveston County

Andrews's complaint alleges that:

- Galveston County encouraged, ratified, and/or approved of the acts and/or omissions alleged in the complaint, and knew or

should have known that the conduct would result in constitutional right violations, Dkt. 1 at ¶ 67;

- Galveston County had policies and customs to employ district attorneys that were inadequately trained and supervised as to their duty to disclose exculpatory evidence and to encourage those attorneys to unlawfully pursue convictions, regardless of the strength of evidence, *id.* at ¶ 68–69;

- Galveston County's policies, customs, and practices equated to the knowing, willful, or intentional disregard of constitutional rights, *id.* at ¶ 70;

- Jack Roady, district attorney, allowed or encouraged his prosecutors to withhold material exculpatory and impeachment evidence, *id.* at ¶ 71;

- Galveston County acted pursuant to policies, practices, customs, and usages, which ratified or permitted various unconstitutional conduct, *id.* at ¶ 72; and

- The above failures were malicious, willful, wanton, and/or exhibited reckless disregard for Andrews's constitutional rights, proximately causing his injuries, *id.* at ¶ 73.

These conclusory allegations are insufficient to establish a claim of municipal liability against Galveston County.

First, the county cannot be held responsible for prosecutorial actions by the district attorney. The policymaker that the complaint identifies is District Attorney Jack Roady. "[A] county may only be held liable for acts of a District Attorney when he functions as a final policymaker for the county." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). While a district attorney can act as a policymaker, he only does so when his acts are of managerial or administrative nature—acts of prosecutorial nature are conducted on behalf of the state rather than the county, and thus the county is not held responsible for those acts. *See id.*; *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001). Andrews alleges that Jack Roady, district attorney, withheld exculpatory evidence—which is a prosecutorial function that the county is not responsible for. *See Mowbray v. Cameron County*, 274 F.3d 269, 276–78 (5th Cir. 2001); *Estrada v. Healey*, CV-H-15-0092, 2015 WL 13158514, at *10–12 (S.D. Tex. June 4, 2015). Additionally, even if the complaint successfully pleads that Galveston County has a policy of failing to train and supervise its district attorneys on their duty to disclose exculpatory evidence, this too falls under the category of prosecutorial functions that Galveston

County is not responsible for. *Mowbray*, 274 F.3d at 278; *Estrada*, 2015 WL 13158514, at *12.

Second, as with the claims against League City, the complaint fails to identify the pattern required to constitute a policy or custom, instead relying only on Andrews's own experience to infer an unconstitutional policy or custom.

Finally, the allegations against Galveston County are all conclusory—any factual allegation directly relates to Andrews's incident rather than Galveston County's policy, the effects of a Galveston-County policy on other individuals, moving force, or deliberate indifference.

Andrews's claims of municipal liability are dismissed.

### 5. Malicious Prosecution

Andrews next alleges that the defendants did not have probable cause to commence a criminal prosecution against him. *Id.* ¶ 76. The defendants also allegedly withheld the exculpatory evidence that would have ended the prosecution if brought to light. *Id.* ¶ 77.

There is no "freestanding constitutional right to be free from malicious prosecution[.]" *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). The Fifth Circuit has held that "causing charges to be filed without probable cause will not without more violate the Constitution." *Id.* at 953. Thus, malicious prosecution on its own "states no constitutional claim." *Id.* "The

initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued." *Id.* at 953. "Such claims . . . may be made under 42 U.S.C. § 1983 . . . [but] they are not claims for malicious prosecution and labeling them as such only invites confusion." *Id.* at 953–54.

In light of *Castellano*, § 1983 is not the appropriate vehicle to vindicate his malicious prosecution claim as it is not a "right[] locatable in constitutional text." 352 F.3d at 953–54. Andrews's malicious-prosecution claim fails under § 1983. The proper vehicle for such a claim, *see Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517–18 (Tex. 1997), would be under 28 U.S.C. § 1367.

### C. Request to Amend

The plaintiff's requests to amend (Dkts. 12 at 25–26; 13 at 18) are denied as to those claims that did not survive this motion. Under this court's local procedures, the plaintiff was afforded opportunities to amend of which he did not avail himself. Additionally, allowing the plaintiff to amend the claims dismissed here would be futile, would cause undue delay, and would unfairly prejudice the defendants. Should the plaintiff wish to amend any

claims surviving this motion, he may move for leave.

\*   \*   \*

For the reasons stated above, the defendants' motions to dismiss are granted in part and denied in part. Dkts. 10; 11. For clarity, the claims for false arrest and continuing incarceration survive. The plaintiff's claims for civil conspiracy, municipal liability, and malicious prosecution under § 1983 are dismissed with prejudice.

Signed on Galveston Island this 11th day of January, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE